## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| HOME OIL COMPANY, INC., d/b/a | ) | |
| HOBO PANTRY FOOD STORES #2, 6, | ) | |
| 10, 20 and 32, an Alabama corporation, | ) | |
| | ) | |
| Petitioner/Plaintiff, | ) | |
| | ) | Civil Action No.:_____ |
| vs. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| by and through the United States | ) | |
| Department of Agriculture, | ) | |
| | ) | |
| Respondent/Defendant. | ) | |

## COMPLAINT FOR JUDICIAL REVIEW OF
## ADMINISTRATIVE DECISION AND REQUEST
## FOR STAY OF ADMINISTRATIVE ENFORCEMENT

Plaintiff, Home Oil Company, Inc. d/b/a Hobo Pantry Food Stores #2, 6, 10,

20 and 32 (sometimes referred to herein as "Home Oil," "Petitioner" or "Plaintiff"),

files this Complaint seeking judicial review of the administrative decisions of the

United States Department of Agriculture regarding Petitioner's participation in the

Supplemental Nutrition Assistance Program (SNAP) for the five (5) noted

convenience stores and asserts as follows:

1.     Plaintiff Home Oil Company, Inc. is an Alabama corporation which has

its principal place of business at 5744 E Hwy 84, Cowarts, Houston County,

Alabama 36321. Home Oil has been in continuous business for some sixty (60) years and is owned and operated by now the third generation of the Shirley family. Home Oil is in the wholesale and retail gasoline and convenience store business and owns twenty nine (29) convenience stores in the Wiregrass area of Southeast Alabama. Those stores include Hobo Pantry Food Stores #2, 6, 10, 20 and 32 which are the subject of the USDA's administrative action that is the subject of this Complaint. "Hobo Pantry" is simply a retail name by which Home Oil does business at these convenience stores and others. Hobo Pantry store #6, 10, 20 and 32 are all company-operated stores of Home Oil. Hobo Pantry store #2 is a leased dealer operated store of Home Oil's as of March 1, 2024.

2.    The Defendant United States of America is a named party herein pursuant to 7 U.S.C.A. § 2023(a)(13) and 7 CFR § 279.7. In this instance, Defendant is acting by and through the United States Department of Agriculture and specifically the USDA's SNAP Program, including the Food and Nutrition Act of 2008 as amended (7 U.S.C. § 2018) and Title 7 CFR Part 278, and specifically § 278.1(l)(1) and § 278.1(k)(2).

3.    This Court has original jurisdiction over this matter pursuant to 7 U.S.C.A. § 2023. The District Court's review of this matter is by trial *de novo* where the Court is required to determine the validity of the questioned administrative action, here the administrative decision of Defendant to withdraw Home Oil's

authorization at these five (5) designated convenience stores to participate as a retailer in the Supplemental Nutrition Assistance Program. The SNAP Program is essentially the current version of the food stamp program. The Defendant's administration decisions for each store are attached hereto as Exhibits 1A, 1B, 1C, 1D and 1 E respectively being the following:

Hobo Pantry Food Store #2
616 N Oates Street
Dothan, Alabama 36303

Hobo Pantry Food Store #20
3090 Denton Road
Dothan, Alabama 36303

Hobo Pantry Food Store #6
735 Ross Clark Circle
Dothan, Alabama 36303

Hobo Pantry Food Store #32
4468 W Main Street
Dothan, Alabama 36305

Hobo Pantry Food Store #10
3660 Rucker Blvd.
Enterprise, Alabama 36330

## Background Facts

4.    The USDA's administrative rulings for each of the five (5) stores are identical and the basis for the USDA's administrative action in each is identical. Each administrative decision finds that Home Oil's authority to participate in the SNAP Program should be removed. Simply put, each decision as to each of the five (5) stores finds that on the day that USDA had an inspector go in each store the inspector found that Home Oil did not have three (3) different kinds of dairy products on the shelf. Apparently they found only milk when Criterion A of 7 C.F.R. § 278.1(k)(2) requires that the participating retailer have three (3) different varieties

of food items in each of the four (4) staple food categories. The four (4) staple food

categories are dairy products, bread or cereals, vegetables or fruits, and meat, poultry

or fish. There is NO finding by USDA that Home Oil didn't have the requisite three

(3) stocking units for each of the three (3) other staple food categories. The only

deficiency noted which forms the sole basis for USDA determining to throw Home

Oil out of the SNAP Program is the literal one moment in time or "snapshot" when

its inspector went in these stores and found that there weren't three (3) dairy product

items presumably only one (1) – milk – in each store. That's it.

5.    Again, USDA's administrative rulings for each of the five (5) stores in

question are attached hereto as Exhibits 1A – 1E respectively.

6.    Home Oil entered the SNAP Program for these five (5) stores at various

times over the years and incredibly as USDA's own ruling in Exhibit 1A provides

on page 2 thereof under "Final Agency Decision," that Hobo Pantry #2 entered the

SNAP Program on October 3, 1980, over forty-four (44) years ago. In that 44+

years, Home Oil has never been cited by the USDA, never warned, much less

suspended or removed from the USDA Program for any alleged violations. Yet, on

this one (1) visit it supposedly had only milk as a dairy product, not the requisite

three (3) and USDA decides to throw Home Oil out of the program. That action is

alarmingly absurd given all the facts. Further on that point, for USDA to decide

pursuant to 7 C.F.R. § 278.1(l)(1) that "Home Oil's continued participation in the

in the program will not further the purposes of the program" is utterly unfounded by Home Oil's active and decades-long participation in the program. Much of the Wiregrass community including the area where store #2 and the other stores at issue are located have a demographic population that very much needs access to the SNAP Program benefits and Home Oil has met those needs at store #2 for over forty-four (44) years as noted. For USDA to literally play "gotcha" as a result of its findings on one (1) visit is frankly unbelievable and dumbfounding.

7.    The stories on the other four (4) stores involved are similar. Store #6, again as shown on page 2 of the "Final Agency Decision" shows Home Oil entered the SNAP Program at that store over twelve (12) years ago, specifically on October 15, 2012. Like with store #2 above, Home Oil has never been cited, warned, suspended, much less removed from the SNAP Program for any violation thereof through its participation at store #6. Yet again, based on one (1) visit by a USDA inspector, finding that there weren't a sufficient number of dairy product items on the shelf at that moment in time, USDA seeks to throw them out of the program.

8.    Further, as to store #10, USDA's own decision shows that Home Oil has participated in the SNAP Program there for over twelve (12) years having initially become an authorized participant as a retailer on September 24, 2012. Home Oil has never been cited, warned, suspended, much less removed from the SNAP Program for any violation thereof for anything in its 12+ year history as a retailer in

the program at store #10.  Again, to choose, based on a single visit, a single moment in time, to find just milk on the shelf as a dairy product item rather than three (3), and to conclude that Home Oil should be kicked out of this program as its "continued participation in the program will not further the purposes of the program" is ridiculous.

9.    Similarly, as to store #20, USDA's filing shows that Home Oil was initially authorized to participate as a retailer in the SNAP Program on July 2, 1996, over twenty-eight (28) years ago.  As with store numbers 2, 6 and 10 above, Home Oil has never been cited, warned, suspended, much less removed from the SNAP Program for any violations at store #20 for the past 28+ years, yet a single visit by a single inspector finding an insufficient number of dairy product items at that moment in time leads to the unreasonable and irrational decision to throw Home Oil out of the program.

10.    Finally, as to store #32, USDA's administrative decision shows that Home Oil was initially authorized to participate as a retailer in the SNAP Program at store #32 on May 9, 2017, over seven and a half (7½ ) years ago.  As with all the other stores, Home Oil has never been cited for any type of violation at that store of the SNAP Program in any form or fashion, and yet at one (1) snapshot in time on one (1) day on one (1) inspection by one (1) inspector, an insufficient number of dairy product items was found on the shelf and the USDA seeks to throw Home Oil

6

out of the program.

11.    These actions by USDA are frankly bizarre given Home Oil's long history of participation in the SNAP Program. Nowhere in any of the findings of the USDA in any of the five (5) stores involved does the USDA suggest Home Oil was not in compliance with the other three (3) staple food categories, meaning there is no suggestion much less any evidence provided that Home Oil did not have the requisite three (3) different varieties of food items in each of the other three (3) staple food categories, namely bread or cereals, vegetables or fruits, and meat, poultry or fish. Again, the only deficiency noted was a failure to have three (3) different varieties of dairy product items on the day of inspection.

12.    Having found this deficiency under what it terms Criterion A (7 CFR § 278.1(b)(1)), USDA then moves to determine whether Home Oil qualifies under Criterion B as set forth in § 278.1(b)(1) and to determine if it has more than fifty percent (50%) of its total gross retail sales in staple foods. Of course Home Oil's store #2 nor any of these five (5) stores has more than fifty percent (50%) of its total gross sales in these staple food items. As Home Oil stated in its response in the administrative proceeding, and with all due respect, Criterion B does not and cannot apply to convenience stores. Home Oil asserts that NO convenience store has more than fifty percent (50%) of its total gross retail sales in staple foods. In fact, Home Oil asserts and will offer evidence that no convenience store in the entire State of

Alabama would meet that requirement or frankly any in the United States.  It is by definition a convenience store.  Customers stop at a convenience store to buy gas, soft drinks, beer, potato chips, cigarettes, etc., as the matter of convenience and convenience store owners and operators provide the basic food category items as required by the SNAP Program because the demographics in much of the State of Alabama, like Southeast Alabama where these Home Oil stores are located, have citizens that need access to such food items (1) on a convenience basis and (2) that they can access with their EBT cards.  Criterion B is intended for stores that sell one type of staple food – like a butcher, or a seafood market or a vegetable retailer, NOT a retail convenience store.

### Request for Relief Including Request for Stay

13.    Accordingly, Home Oil asserts that the USDA's action in withdrawing its authorization as a retailer to participate in the SNAP Program based on its limited findings of a failure only to have a sufficient number of dairy product items when all the other evidence suggests it was fully compliant in the other three (3) food categories, is simply unfounded and without basis.  Home Oil asks the Court after hearing and an opportunity to be heard to reverse the findings of the USDA and allow it to continue to participate as a retailer in the SNAP Program as it has done so at these five (5) stores anywhere from as little as seven and a half (7½) years to almost forty five (45) years.  The impact of withdrawing Home Oil's authorization

to participate in this program will be dramatic for its customer base it has served for decades in the Wiregrass of Southeast Alabama not to mention the significant economic impact on Home Oil's own business.

14.    Further, Home Oil asks this Court to stay Defendant's administrative enforcement in this instance as to each of the five (5) stores; that enforcement being the withdrawal of Home Oil's authority as a retailer to participate in the SNAP Program at these five (5) stores.  More specifically, that request for stay would be to allow Home Oil to continue to participate as a retailer in the SNAP Program at these five (5) stores until this Court has had an opportunity to hear this case on the merits and determine the appropriate result on the merits (see 7 CFR § 279.7(d)).  On this request for stay and pursuant to said regulatory authority, Home Oil is prepared to be heard on this issue, asserts that not staying this administrative action will cause Home Oil irreparable harm absent said stay and Home Oil asserts that it is likely to prevail on the merits of the case given the arguments set forth hereinabove and after final hearing.

WHEREFORE, Home Oil prays as follows:

a.    That this Court issue a stay of USDA's administrative action seeking to withdraw Home Oil's authority to participate as a retailer in the SNAP Program pending a final hearing on the merits;

b.     That this Court after hearing will determine that the USDA's administrative findings as set forth herein are in error, are due to be reversed, and Home Oil should continue to be allowed to participate as a retailer in the SNAP Program at each of the five (5) subject convenience stores.

c.     That Home Oil should have such other, further or different relief to which this Court deems it entitled, to include without limitation the recovery of costs and attorney's fees.

_H. Dean Mooty, Jr._
H. Dean Mooty, Jr. (ASB-2844-006H)
Robert S. Mooty (ASB-5407-R58M)
Attorneys for Petitioner/Plaintiff Home Oil
Company, Inc. d/b/a Hobo Pantry Food
Stores #2, 6, 10, 20 and 32
Mooty & Associates, P.C.
600 Clay Street
Montgomery, Alabama 36104
Telephone:  (334) 264-0400
Facsimile:  (334) 264-0380
E-mail:     hdm@mooty-assoc.com
            rsm@mooty-assoc.com

10

Pursuant to FRCP Rule 4(i)(1)(A), the following persons are to be served by certified mail with the Summons and Complaint:

**Kevin P. Davidson, Acting United States Attorney**
**Middle District of Alabama**
**131 Clayton Street**
**Montgomery, AL  36104**

**United States Attorney's Office/Civil – Process Clerk**
**Middle District of Alabama**
**131 Clayton Street**
**Montgomery, AL  36104**

**Merrick B. Garland, United States Attorney General**
**U.S. Department of Justice**
**950 Pennsylvania Avenue, NW**
**Washington, DC 20530-0001**

**Amie Churchill**
**United States Department of Agriculture**
**1320 Braddock Place, 5th Floor**
**Alexandria, VA  22314**

# EXHIBIT 1A

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative and Judicial Review Branch**

Hobo Pantry Food Store #2,

Appellant,

v.

Retailer Operations Division,

Respondent.

Case Number: C0275911

## FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS) finds there is sufficient evidence to support the determination by the Retailer Operations Division to withdraw the authorization of Hobo Pantry Food Store #2 ("Appellant") to participate as a retailer in the Supplemental Nutrition Assistance Program (SNAP). As a result, the firm may not reapply for SNAP authorization for a period of six months from the date of withdrawal.

## ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 Code of Federal Regulations (CFR) Part 278, when it withdrew the authorization of Hobo Pantry Food Store #2 to participate as a SNAP retailer.

## AUTHORITY

7 U.S.C. § 2023 and implementing regulations, at 7 CFR § 279.1, provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

## CASE SUMMARY

Appellant, Hobo Pantry Food Store #2, was initially authorized to participate as a retailer in SNAP on October 3, 1980. In accordance with regulation, each SNAP-authorized firm is required to undergo a periodic reauthorization process to determine whether the firm still meets eligibility requirements.

In June 2022, Appellant provided information in support of the reauthorization process. Appellant reported that staple foods comprised approximately five percent of the store's total

2

retail sales. As part of the firm's reauthorization process, an onsite store visit was conducted by an FNS contractor on July 10, 2023, to verify the firm's reported staple food stock.

After reviewing the store visit report and photographs, and re-evaluating Appellant's reauthorization materials, the Retailer Operations Division determined that the firm was ineligible for SNAP participation under either Criterion A or Criterion B, as set forth in 7 CFR § 278.1(b)(1) of SNAP regulations.

In a letter dated August 25, 2023, the Retailer Operations Division informed Appellant that its SNAP authorization was being withdrawn for a period of six months pursuant to regulation, at 7 CFR § 278.1(k)(2). The withdrawal letter stated Appellant failed to meet the requirements of Criterion A because it did not offer for sale a variety of foods in required minimum quantities on a continuous basis in each of the four staple food categories and it failed to meet the requirements of Criterion B because staple food sales did not comprise more than 50 percent of its total retail sales. The letter indicated that FNS considered the firm's eligibility under the Need for Access provision of the regulations, found at 7 CFR § 278.1(b)(6), but determined that Appellant did not qualify for SNAP authorization under this provision.

On September 1, 2023, Appellant requested an administrative review of the withdrawal determination. Although the request was granted, Appellant's SNAP authorization was inadvertently withdrawn. Appellant's authorization was subsequently reinstated, and withdrawal is being held in abeyance pending completion of this review.

On October 23, 2024, the administrative review was assigned to review officer Amie Churchill.

## STANDARD OF REVIEW

In an appeal of an adverse action, such as the withdrawal of a firm's SNAP authorization, an appellant bears the burden of proving by a preponderance of the evidence that the administrative action should be reversed. This means an appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling law in this matter is found in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2018), and is promulgated through regulation under Title 7 CFR Part 278. In particular, 7 CFR § 278.1(l)(1) and § 278.1(k)(2) establish the authority upon which FNS shall withdraw the SNAP authorization of any firm which fails to meet established eligibility requirements.

7 CFR § 278.1(l)(1) states, in part:

> FNS shall withdraw the authorization of any firm authorized to
> participate in the program for any of the following reasons.

3

(i) The firm's continued participation in the program will not further the purposes of the program;

(ii) The firm fails to meet the specification of paragraph (b), (c), (d), (e), (f), (g), (h), or (i) of this section;

(iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section...for the time period specified in paragraph (k)(2) of this section.

7 CFR § 278.1(k)(2) states, in part:

FNS shall deny the application of any firm if it determines that:

(2) The firm has failed to meet the eligibility requirements for authorization under Criterion A or Criterion B, as specified in paragraph (b)(1)(i) of this section.... Any firm that has been denied authorization on these bases shall not be eligible to submit a new application for authorization in the program for a minimum period of six months from the effective date of the denial.

7 CFR § 271.2 defines a retail food store as:

(1) An establishment or house-to-house trade route that sells food for home preparation and consumption normally displayed in a public area, and either offers for sale qualifying staple food items on a continuous basis, evidenced by having no fewer than [three]* different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety, including at least one variety of perishable foods in at least [two]* such categories (Criterion A) as set forth in § 278.1(b)(1) of this chapter, or has more than 50 percent of its total gross retail sales in staple foods (Criterion B) as set forth in § 278.1(b)(1) of this chapter as determined by visual inspection, marketing structure, business licenses, accessibility of food items offered for sale, purchase and sales records, counting of stockkeeping units, or other inventory or accounting recordkeeping methods that are customary or reasonable in the retail food industry as set forth in § 278.1(b)(1) of this chapter...

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 271.2 defines staple food as:

> ...food items intended for home preparation and consumption in
> each of the following four categories: Meat, poultry, or fish;
> bread or cereals; vegetables or fruits; and dairy products...
> Hot foods are not eligible for purchase with SNAP benefits and,
> therefore, do not qualify as staple foods for the purpose of
> determining eligibility under § 278.1(b)(1) of this chapter.
> Commercially processed foods and prepared mixtures with multiple
> ingredients that do not represent a single staple food category
> shall only be counted in one staple food category. For example,
> foods such as cold pizza, macaroni and cheese, multi-ingredient
> soup, or frozen dinners, shall only be counted as one staple food
> item and will be included in the staple food category of the main
> ingredient as determined by FNS. Accessory food items include
> foods that are generally considered snack foods or desserts such
> as, but not limited to, chips, ice cream, crackers, cupcakes,
> cookies, popcorn, pastries, and candy, and other food items that
> complement or supplement meals, such as, but not limited to,
> coffee, tea, cocoa, carbonated and uncarbonated drinks,
> condiments, spices, salt, and sugar. Items shall not be
> classified as accessory food exclusively based on packaging size
> but rather based on the aforementioned definition and as
> determined by FNS. A food product containing an accessory food
> item as its main ingredient shall be considered an accessory food
> item. Accessory food items shall not be considered staple foods
> for purposes of determining the eligibility of any firm.

7 CFR § 278.1(b)(1)(i) states, in part:

> An establishment...will effectuate the purposes of the program if
> it sells food for home preparation and consumption and meets one
> of the following criteria: Offer for sale, on a continuous basis,
> a variety of qualifying foods in each of the four categories of
> staple foods...including perishable foods in at least [two]* of
> the categories (Criterion A); or have more than 50 percent of the
> total gross retail sales of the establishment...in staple foods
> (Criterion B).

7 CFR § 278.1(b)(1)(ii) states, in part:

> In order to qualify under [Criterion A] firms shall:
>
> (A) Offer for sale and normally display in a public area,
> qualifying staple food items on a continuous basis, evidenced by

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy
Memorandum 2020-04 for additional information regarding the enhanced retailer standards,
which were implemented on January 17, 2018. This memorandum can be found on the FNS
public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

having, on any given day of operation, no fewer than *[three]** different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety and at least one variety of perishable foods in at least *[two]** staple food categories. Documentation to determine if a firm stocks a sufficient amount of required staple foods to offer them for sale on a continuous basis may be required in cases where it is not clear that the firm has made reasonable stocking efforts to meet the stocking requirement. Such documentation can be achieved through verifying information, when requested by FNS, such as invoices and receipts in order to prove that the firm had ordered and/or received a sufficient amount of required staple foods up to 21 calendar days prior to the date of the store visit...

(B) Offer for sale perishable staple food items in at least *[two]** staple food categories. Perishable foods are items which are either frozen staple food items or fresh, unrefrigerated or refrigerated staple food items that will spoil or suffer significant deterioration in quality within 2-3 weeks; and

(C) *[Offer a variety of staple foods which means different types of foods, such as apples, cabbage, tomatoes, and squash in the fruit or vegetable staple food category, or milk, cheese, butter and yogurt in the dairy category. Variety of foods is not to be interpreted as different brands, different nutrient values, different varieties of packaging, or different package sizes. Similar processed food items with varying ingredients such as, but not limited to, sausages, breakfast cereals, milk, sliced breads, and cheeses, and similar unprocessed food items, such as, but not limited to different varieties of apples, cabbage, tomatoes, or squash shall not each be considered as more than one staple food variety for the purpose of determining variety. Multiple ingredient food items...such as...cold pizza, macaroni and cheese, soup, or frozen dinners, shall only be counted as one staple food variety each and will normally be included in the staple food category of the main ingredient as determined by the FNS.]**

7 CFR § 278.1(b)(1)(iii) states, in part:

In order to qualify under [Criterion B] firms must have more than 50 percent of their total gross retail sales in staple food sales. Total gross retail sales must include all retail sales of a firm, including food and non-food merchandise, as well as services, such as rental fees, professional fees, and entertainment/sports/games income...

---

* As currently implemented. See SNAP Retailer Policy Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 278.1(b)(6) states:

> *Need for access.* FNS will consider whether the applicant firm is located in an area with significantly limited access to food when the applicant firm fails to meet Criterion A per paragraph (b)(1)(ii) or Criterion B per paragraph (b)(1)(iii) of this section so long as the applicant firm meets all other SNAP authorization requirements. In determining whether an applicant is located in such an area, FNS may consider access factors such as, but not limited to, the distance from the applicant firm to the nearest currently SNAP authorized firm and transportation options. In determining whether to authorize an applicant despite its failure to meet Criterion A and Criterion B, FNS will also consider factors such as, but not limited to, the extent of the applicant firm's stocking deficiencies in meeting Criterion A and Criterion B and whether the store furthers the purposes of the Program. Such considerations will be conducted during the application process as described in paragraph (a) of this section.

## APPELLANT'S CONTENTIONS

Appellant made the following summarized contentions for administrative review:

- Appellant requests reconsideration of the SNAP authorization withdrawal determination.
- Appellant has been an active and good faith participant in the SNAP program and its predecessor programs since inception.
- Customers in the state depend on using their EBT cards at Appellant.
- The letter Appellant received stated that it failed to stock the required number of dairy units.
- Appellant's understanding of the regulations is that it must have the required number of food items in three of the four food categories. As the withdrawal letter is silent to the other three categories, Appellant assumes it carried the necessary items in the other three categories or the other categories were not inspected. Either way, failing to have the minimum number of units in just one category puts Appellant in compliance with its reading of the regulations.
- Appellant is a convenience store. Stock turns over very quickly.
- Appellant provided a listing of its invoices/receipts from its grocery supplier for the 21 days prior to the date of the store visit.
- Based on their business model, no convenience store has more than 50% of its total gross retail sales in staple foods.
- Criterion B is intended for stores that sell one type of staple food.

Appellant provided a copy of the letter and invoice listing it had previously provided to the Retailer Operations Division.

The preceding may represent only a summary of Appellant's contentions presented in this

matter. However, in reaching a final decision, full attention was given to all contentions presented, including any not specifically summarized or referenced herein.

## ANALYSIS AND FINDINGS

It is important to clarify for the record that the purpose of this review is to either validate or invalidate the earlier determination of the Retailer Operations Division. Thus, this review is limited to consideration of the relevant facts and circumstances as they existed at the time the Retailer Operations Division rendered its decision.

After reviewing the record, as well as evaluating the contentions submitted by Appellant, this review finds that Appellant does not carry, on a continuous basis, sufficient staple food inventory to be eligible for SNAP authorization under Criterion A, nor do its staple foods sales meet eligibility requirements under Criterion B. Appellant is also ineligible for authorization under the Need for Access provision. Accordingly, Appellant's SNAP authorization was properly withdrawn for a period of six months.

### Criterion A Eligibility

In order for a firm to be eligible under Criterion A, it must offer for sale no fewer than three different varieties of food items in each of the four staple food categories, with a minimum depth of stock of three stocking units for each variety. In addition, retailers must meet Criterion A eligibility requirements on a continuous basis.

Regarding Appellant, the record shows that the firm did not have enough inventory in the dairy products staple food category on the day of the store visit to meet Criterion A eligibility requirements. When the Retailer Operations Division withdrew Appellant's firm, it found that the firm had adequate stocking units of only one dairy product variety: milk. The firm did not have three stocking units of two additional varieties of dairy products. Appellant was six stocking units short of meeting Criterion A eligibility requirements.

Appellant provided a copy of the inventory records it had previously provided to the Retailer Operations Division. A review of these records demonstrated the store purchased cheese products and additional milk products. However, the records did not show the purchase of a third variety of dairy staple food products. Accordingly, Appellant remains three stocking units short of meeting inventory requirements in the dairy products staple food category.

The inventory records submitted fail to establish that the firm normally carries a sufficient variety and quantity of staple foods. SNAP regulations require that a firm continuously maintain sufficient staple food inventory in order to remain eligible for program participation (see 7 CFR § 278.1(b)(1)(i) and (ii)). A firm that does not maintain proper inventory at all times does not effectuate the purposes of the program and cannot remain authorized.

This review agrees with the Retailer Operations Division's assessment of Appellant's inventory at the time of the store visit and finds that Appellant's contentions do not demonstrate that it met Criterion A eligibility requirements continuously. Accordingly, the Retailer Operations Division

correctly determined that Appellant is not eligible for SNAP authorization under Criterion A.

### Criterion B Eligibility

Eligibility under Criterion B requires that more than 50 percent of the firm's total gross retail sales be from the sale of staple foods. The Retailer Operations Division determined that Appellant did not meet Criterion B because the store's staple food sales did not comprise more than 50 percent of its gross retail sales. This was based on the SNAP retailer reauthorization materials provided by Appellant, in which Appellant reported that only about 5 percent of the store's gross retail sales were in staple food items. Appellant did not provide any information that would demonstrate the percentage of staple foods contained in the store's gross retail sales.

There is nothing in the record that indicates this low percentage of staple food sales to gross retail sales is inaccurate. Based on a preponderance of the evidence, the Retailer Operations Division properly determined that Appellant was ineligible under Criterion B.

### Need for Access

SNAP regulations at 7 CFR § 278.1(b)(6) state that FNS will consider authorizing a firm which fails to meet Criterion A or B as long as it is located in an area with significantly limited access to food and provided that it meets all other eligibility requirements. This Need for Access evaluation considers factors such as distance to the nearest SNAP-authorized retail store, transportation options, extent of the firm's stocking deficiencies, and whether the firm furthers the purposes of the program.

As for Hobo Pantry Food Store #2, the record indicates that the Retailer Operations Division conducted a Need for Access evaluation and determined Appellant did not qualify for SNAP authorization under this provision. This review agrees that authorization under the Need for Access provision is not appropriate in this case.

### CONCLUSION

Based on the analysis above, the determination by the Retailer Operations Division to withdraw the SNAP authorization of Hobo Pantry Food Store #2 is sustained. The firm does not meet eligibility requirements under Criterion A or B as outlined in regulations, at 7 CFR § 278.1(b)(1), and is not eligible for authorization under Need for Access, as provided under 7 CFR § 278.1(b)(6).

Additionally, the contentions presented by Appellant are not sufficient to show that the withdrawal decision made by the Retailer Operations Division should be reversed.

Pursuant to 7 CFR § 278.1(k)(2), Appellant is ineligible to reapply for authorization as a retailer in SNAP for a minimum period of six months from the effective date of the withdrawal. In accordance with the Food and Nutrition Act of 2008 and SNAP regulations, the withdrawal of Hobo Pantry Food Store #2 shall become effective 30 days after delivery of this decision.

When eligible, Appellant may reapply for SNAP authorization using the application instructions contained on the FNS website. Questions regarding the application process can be answered by the FNS Retailer Service Center at 877-823-4369.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.


AMIE CHURCHILL                                                November 22, 2024
ADMINISTRATIVE REVIEW OFFICER

# EXHIBIT 1B

U.S. Department of Agriculture
Food and Nutrition Service
Administrative and Judicial Review Branch

Hobo Pantry Food Store #6,

Appellant,

v.

Retailer Operations Division,

Respondent.

Case Number: C0275918

## FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS) finds there is sufficient evidence to support the determination by the Retailer Operations Division to withdraw the authorization of Hobo Pantry Food Store #6 ("Appellant") to participate as a retailer in the Supplemental Nutrition Assistance Program (SNAP). As a result, the firm may not reapply for SNAP authorization for a period of six months from the date of withdrawal.

## ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 Code of Federal Regulations (CFR) Part 278, when it withdrew the authorization of Hobo Pantry Food Store #6 to participate as a SNAP retailer.

## AUTHORITY

7 U.S.C. § 2023 and implementing regulations, at 7 CFR § 279.1, provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

## CASE SUMMARY

Appellant, Hobo Pantry Food Store #6, was initially authorized to participate as a retailer in SNAP on October 15, 2012. In accordance with regulation, each SNAP-authorized firm is required to undergo a periodic reauthorization process to determine whether the firm still meets eligibility requirements.

In June 2022, Appellant provided information in support of the reauthorization process. Appellant reported that staple foods comprised approximately five percent of the store's total

retail sales. As part of the firm's reauthorization process, an onsite store visit was conducted by an FNS contractor on July 12, 2023, to verify the firm's reported staple food stock.

After reviewing the store visit report and photographs, and re-evaluating Appellant's reauthorization materials, the Retailer Operations Division determined that the firm was ineligible for SNAP participation under either Criterion A or Criterion B, as set forth in 7 CFR § 278.1(b)(1) of SNAP regulations.

In a letter dated August 25, 2023, the Retailer Operations Division informed Appellant that its SNAP authorization was being withdrawn for a period of six months pursuant to regulation, at 7 CFR § 278.1(k)(2). The withdrawal letter stated Appellant failed to meet the requirements of Criterion A because it did not offer for sale a variety of foods in required minimum quantities on a continuous basis in each of the four staple food categories and it failed to meet the requirements of Criterion B because staple food sales did not comprise more than 50 percent of its total retail sales. The letter indicated that FNS considered the firm's eligibility under the Need for Access provision of the regulations, found at 7 CFR § 278.1(b)(6), but determined that Appellant did not qualify for SNAP authorization under this provision.

On September 1, 2023, Appellant requested an administrative review of the withdrawal determination. Although the request was granted, Appellant's SNAP authorization was inadvertently withdrawn. Appellant's authorization was subsequently reinstated, and withdrawal is being held in abeyance pending completion of this review.

On October 23, 2024, the administrative review was assigned to review officer Amie Churchill.

## STANDARD OF REVIEW

In an appeal of an adverse action, such as the withdrawal of a firm's SNAP authorization, an appellant bears the burden of proving by a preponderance of the evidence that the administrative action should be reversed. This means an appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling law in this matter is found in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2018), and is promulgated through regulation under Title 7 CFR Part 278. In particular, 7 CFR § 278.1(l)(1) and § 278.1(k)(2) establish the authority upon which FNS shall withdraw the SNAP authorization of any firm which fails to meet established eligibility requirements.

7 CFR § 278.1(l)(1) states, in part:

```
FNS shall withdraw the authorization of any firm authorized to
participate in the program for any of the following reasons.
```

> (i) The firm's continued participation in the program will not further the purposes of the program;
>
> (ii) The firm fails to meet the specification of paragraph (b), (c), (d), (e), (f), (g), (h), or (i) of this section;
>
> (iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section...for the time period specified in paragraph (k)(2) of this section.

7 CFR § 278.1(k)(2) states, in part:

> FNS shall deny the application of any firm if it determines that:
>
> (2) The firm has failed to meet the eligibility requirements for authorization under Criterion A or Criterion B, as specified in paragraph (b)(1)(i) of this section.... Any firm that has been denied authorization on these bases shall not be eligible to submit a new application for authorization in the program for a minimum period of six months from the effective date of the denial.

7 CFR § 271.2 defines a retail food store as:

> (1) An establishment or house-to-house trade route that sells food for home preparation and consumption normally displayed in a public area, and either offers for sale qualifying staple food items on a continuous basis, evidenced by having no fewer than [three]* different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety, including at least one variety of perishable foods in at least [two]* such categories (Criterion A) as set forth in § 278.1(b)(1) of this chapter, or has more than 50 percent of its total gross retail sales in staple foods (Criterion B) as set forth in § 278.1(b)(1) of this chapter as determined by visual inspection, marketing structure, business licenses, accessibility of food items offered for sale, purchase and sales records, counting of stockkeeping units, or other inventory or accounting recordkeeping methods that are customary or reasonable in the retail food industry as set forth in § 278.1(b)(1) of this chapter...

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 271.2 defines staple food as:

> ...food items intended for home preparation and consumption in each of the following four categories: Meat, poultry, or fish; bread or cereals; vegetables or fruits; and dairy products... Hot foods are not eligible for purchase with SNAP benefits and, therefore, do not qualify as staple foods for the purpose of determining eligibility under § 278.1(b)(1) of this chapter. Commercially processed foods and prepared mixtures with multiple ingredients that do not represent a single staple food category shall only be counted in one staple food category. For example, foods such as cold pizza, macaroni and cheese, multi-ingredient soup, or frozen dinners, shall only be counted as one staple food item and will be included in the staple food category of the main ingredient as determined by FNS. Accessory food items include foods that are generally considered snack foods or desserts such as, but not limited to, chips, ice cream, crackers, cupcakes, cookies, popcorn, pastries, and candy, and other food items that complement or supplement meals, such as, but not limited to, coffee, tea, cocoa, carbonated and uncarbonated drinks, condiments, spices, salt, and sugar. Items shall not be classified as accessory food exclusively based on packaging size but rather based on the aforementioned definition and as determined by FNS. A food product containing an accessory food item as its main ingredient shall be considered an accessory food item. Accessory food items shall not be considered staple foods for purposes of determining the eligibility of any firm.

7 CFR § 278.1(b)(1)(i) states, in part:

> An establishment...will effectuate the purposes of the program if it sells food for home preparation and consumption and meets one of the following criteria: Offer for sale, on a continuous basis, a variety of qualifying foods in each of the four categories of staple foods...including perishable foods in at least [two]* of the categories (Criterion A); or have more than 50 percent of the total gross retail sales of the establishment...in staple foods (Criterion B).

7 CFR § 278.1(b)(1)(ii) states, in part:

> In order to qualify under [Criterion A] firms shall:
>
> (A) Offer for sale and normally display in a public area, qualifying staple food items on a continuous basis, evidenced by

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

having, on any given day of operation, no fewer than *[three]*\*
different varieties of food items in each of the four staple food
categories with a minimum depth of stock of three stocking units
for each qualifying staple variety and at least one variety of
perishable foods in at least *[two]*\* staple food categories.
Documentation to determine if a firm stocks a sufficient amount
of required staple foods to offer them for sale on a continuous
basis may be required in cases where it is not clear that the
firm has made reasonable stocking efforts to meet the stocking
requirement. Such documentation can be achieved through verifying
information, when requested by FNS, such as invoices and receipts
in order to prove that the firm had ordered and/or received a
sufficient amount of required staple foods up to 21 calendar days
prior to the date of the store visit...
(B) Offer for sale perishable staple food items in at least
*[two]*\* staple food categories. Perishable foods are items which
are either frozen staple food items or fresh, unrefrigerated or
refrigerated staple food items that will spoil or suffer
significant deterioration in quality within 2-3 weeks; and
(C) *[Offer a variety of staple foods which means different types
of foods, such as apples, cabbage, tomatoes, and squash in the
fruit or vegetable staple food category, or milk, cheese, butter
and yogurt in the dairy category. Variety of foods is not to be
interpreted as different brands, different nutrient values,
different varieties of packaging, or different package sizes.
Similar processed food items with varying ingredients such as,
but not limited to, sausages, breakfast cereals, milk, sliced
breads, and cheeses, and similar unprocessed food items, such as,
but not limited to different varieties of apples, cabbage,
tomatoes, or squash shall not each be considered as more than one
staple food variety for the purpose of determining variety.
Multiple ingredient food items...such as...cold pizza, macaroni
and cheese, soup, or frozen dinners, shall only be counted as one
staple food variety each and will normally be included in the
staple food category of the main ingredient as determined by the
FNS.]*\*

7 CFR § 278.1(b)(1)(iii) states, in part:

In order to qualify under [Criterion B] firms must have more than
50 percent of their total gross retail sales in staple food
sales. Total gross retail sales must include all retail sales of
a firm, including food and non-food merchandise, as well as
services, such as rental fees, professional fees, and
entertainment/sports/games income...

---

\* As currently implemented. See SNAP Retailer Policy Division Policy Memorandum 2020-04
for additional information regarding the enhanced retailer standards, which were implemented on
January 17, 2018. This memorandum can be found on the FNS public website at
https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 278.1(b)(6) states:

> *Need for access.* FNS will consider whether the applicant firm is
> located in an area with significantly limited access to food when
> the applicant firm fails to meet Criterion A per paragraph
> (b)(1)(ii) or Criterion B per paragraph (b)(1)(iii) of this
> section so long as the applicant firm meets all other SNAP
> authorization requirements. In determining whether an applicant
> is located in such an area, FNS may consider access factors such
> as, but not limited to, the distance from the applicant firm to
> the nearest currently SNAP authorized firm and transportation
> options. In determining whether to authorize an applicant despite
> its failure to meet Criterion A and Criterion B, FNS will also
> consider factors such as, but not limited to, the extent of the
> applicant firm's stocking deficiencies in meeting Criterion A and
> Criterion B and whether the store furthers the purposes of the
> Program. Such considerations will be conducted during the
> application process as described in paragraph (a) of this
> section.

## APPELLANT'S CONTENTIONS

Appellant made the following summarized contentions for administrative review:

- Appellant requests reconsideration of the SNAP authorization withdrawal determination.
- Appellant has been an active and good faith participant in the SNAP program and its predecessor programs since inception.
- Customers in the state depend on using their EBT cards at Appellant.
- The letter Appellant received stated that it failed to stock the required number of dairy units.
- Appellant's understanding of the regulations is that it must have the required number of food items in three of the four food categories. As the withdrawal letter is silent to the other three categories, Appellant assumes it carried the necessary items in the other three categories or the other categories were not inspected. Either way, failing to have the minimum number of units in just one category puts Appellant in compliance with its reading of the regulations.
- Appellant is a convenience store. Stock turns over very quickly.
- Appellant provided a listing of its invoices/receipts from its grocery supplier for the 21 days prior to the date of the store visit.
- Based on their business model, no convenience store has more than 50% of its total gross retail sales in staple foods.
- Criterion B is intended for stores that sell one type of staple food.

Appellant provided a copy of the letter and invoice listing it had previously provided to the Retailer Operations Division.

The preceding may represent only a summary of Appellant's contentions presented in this

matter. However, in reaching a final decision, full attention was given to all contentions presented, including any not specifically summarized or referenced herein.

## ANALYSIS AND FINDINGS

It is important to clarify for the record that the purpose of this review is to either validate or invalidate the earlier determination of the Retailer Operations Division. Thus, this review is limited to consideration of the relevant facts and circumstances as they existed at the time the Retailer Operations Division rendered its decision.

After reviewing the record, as well as evaluating the contentions submitted by Appellant, this review finds that Appellant does not carry, on a continuous basis, sufficient staple food inventory to be eligible for SNAP authorization under Criterion A, nor do its staple foods sales meet eligibility requirements under Criterion B. Appellant is also ineligible for authorization under the Need for Access provision. Accordingly, Appellant's SNAP authorization was properly withdrawn for a period of six months.

### Criterion A Eligibility

In order for a firm to be eligible under Criterion A, it must offer for sale no fewer than three different varieties of food items in each of the four staple food categories, with a minimum depth of stock of three stocking units for each variety. In addition, retailers must meet Criterion A eligibility requirements on a continuous basis.

Regarding Appellant, the record shows that the firm did not have enough inventory in the dairy products staple food category on the day of the store visit to meet Criterion A eligibility requirements. When the Retailer Operations Division withdrew Appellant's firm, it found that the firm had adequate stocking units of only one dairy product variety: milk. The store also had two stocking units of cheese, but not a third. Accordingly, Appellant was four stocking units short of meeting eligibility requirements in the dairy products staple food category.

On review, Appellant provided a copy of the inventory records for the 21-day period prior to the store visit, which it had previously provided to the Retailer Operations Division. A review of these records showed that the store did not purchase any dairy food products during this period. Accordingly, Appellant remains four stocking units short of meeting inventory requirements in the dairy products staple food category.

This review agrees with the Retailer Operations Division's assessment of Appellant's inventory at the time of the store visit and finds that Appellant's contentions do not demonstrate that it met Criterion A eligibility requirements continuously. Accordingly, the Retailer Operations Division correctly determined that Appellant is not eligible for SNAP authorization under Criterion A.

### Criterion B Eligibility

Eligibility under Criterion B requires that more than 50 percent of the firm's total gross retail sales be from the sale of staple foods. The Retailer Operations Division determined that

Appellant did not meet Criterion B because the store's staple food sales did not comprise more than 50 percent of its gross retail sales. This was based on the SNAP retailer reauthorization materials provided by Appellant, in which Appellant reported that only about 5 percent of the store's gross retail sales were in staple food items. On review, Appellant did not provide any information that would demonstrate the percentage of staple foods contained in the store's gross retail sales.

There is nothing in the record that indicates this low percentage of staple food sales to gross retail sales is inaccurate. Based on a preponderance of the evidence, the Retailer Operations Division properly determined that Appellant was ineligible under Criterion B.

### Need for Access

SNAP regulations at 7 CFR § 278.1(b)(6) state that FNS will consider authorizing a firm which fails to meet Criterion A or B as long as it is located in an area with significantly limited access to food and provided that it meets all other eligibility requirements. This Need for Access evaluation considers factors such as distance to the nearest SNAP-authorized retail store, transportation options, extent of the firm's stocking deficiencies, and whether the firm furthers the purposes of the program.

As for Hobo Pantry Food Store #6, the record indicates that the Retailer Operations Division conducted a Need for Access evaluation and determined Appellant did not qualify for SNAP authorization under this provision. This review agrees that authorization under the Need for Access provision is not appropriate in this case.

### CONCLUSION

Based on the analysis above, the determination by the Retailer Operations Division to withdraw the SNAP authorization of Hobo Pantry Food Store #6 is sustained. The firm does not meet eligibility requirements under Criterion A or B as outlined in regulations, at 7 CFR § 278.1(b)(1), and is not eligible for authorization under Need for Access, as provided under 7 CFR § 278.1(b)(6).

Additionally, the contentions presented by Appellant are not sufficient to show that the withdrawal decision made by the Retailer Operations Division should be reversed.

Pursuant to 7 CFR § 278.1(k)(2), Appellant is ineligible to reapply for authorization as a retailer in SNAP for a minimum period of six months from the effective date of the withdrawal. In accordance with the Food and Nutrition Act of 2008 and SNAP regulations, the withdrawal of Hobo Pantry Food Store #6 shall become effective 30 days after delivery of this decision.

When eligible, Appellant may reapply for SNAP authorization using the application instructions contained on the FNS website. Questions regarding the application process can be answered by the FNS Retailer Service Center at 877-823-4369.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

AMIE CHURCHILL                                                   November 22, 2024
ADMINISTRATIVE REVIEW OFFICER

# EXHIBIT 1C

U.S. Department of Agriculture
Food and Nutrition Service
Administrative and Judicial Review Branch

Hobo Pantry Food Store #10,

Appellant,

v.

Retailer Operations Division,

Respondent.

Case Number: C0275915

## FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS) finds there is sufficient evidence to support the determination by the Retailer Operations Division to withdraw the authorization of Hobo Pantry Food Store #10 ("Appellant") to participate as a retailer in the Supplemental Nutrition Assistance Program (SNAP). As a result, the firm may not reapply for SNAP authorization for a period of six months from the date of withdrawal.

## ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 Code of Federal Regulations (CFR) Part 278, when it withdrew the authorization of Hobo Pantry Food Store #10 to participate as a SNAP retailer.

## AUTHORITY

7 U.S.C. § 2023 and implementing regulations, at 7 CFR § 279.1, provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

## CASE SUMMARY

Appellant, Hobo Pantry Food Store #10, was initially authorized to participate as a retailer in SNAP on September 24, 2012. In accordance with regulation, each SNAP-authorized firm is required to undergo a periodic reauthorization process to determine whether the firm still meets eligibility requirements.

In June 2022, Appellant provided information in support of the reauthorization process. Appellant reported that staple foods comprised approximately five percent of the store's total

2

retail sales. As part of the firm's reauthorization process, an onsite store visit was conducted by an FNS contractor on July 7, 2023, to verify the firm's reported staple food stock.

After reviewing the store visit report and photographs, and re-evaluating Appellant's reauthorization materials, the Retailer Operations Division determined that the firm was ineligible for SNAP participation under either Criterion A or Criterion B, as set forth in 7 CFR § 278.1(b)(1) of SNAP regulations.

In a letter dated August 25, 2023, the Retailer Operations Division informed Appellant that its SNAP authorization was being withdrawn for a period of six months pursuant to regulation, at 7 CFR § 278.1(k)(2). The withdrawal letter stated Appellant failed to meet the requirements of Criterion A because it did not offer for sale a variety of foods in required minimum quantities on a continuous basis in each of the four staple food categories and it failed to meet the requirements of Criterion B because staple food sales did not comprise more than 50 percent of its total retail sales. The letter indicated that FNS considered the firm's eligibility under the Need for Access provision of the regulations, found at 7 CFR § 278.1(b)(6), but determined that Appellant did not qualify for SNAP authorization under this provision.

On September 1, 2023, Appellant requested an administrative review of the withdrawal determination. Although the request was granted, Appellant's SNAP authorization was inadvertently withdrawn. Appellant's authorization was subsequently reinstated, and withdrawal is being held in abeyance pending completion of this review.

On October 23, 2024, the administrative review was assigned to review officer Amie Churchill.

## STANDARD OF REVIEW

In an appeal of an adverse action, such as the withdrawal of a firm's SNAP authorization, an appellant bears the burden of proving by a preponderance of the evidence that the administrative action should be reversed. This means an appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling law in this matter is found in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2018), and is promulgated through regulation under Title 7 CFR Part 278. In particular, 7 CFR § 278.1(l)(1) and § 278.1(k)(2) establish the authority upon which FNS shall withdraw the SNAP authorization of any firm which fails to meet established eligibility requirements.

7 CFR § 278.1(l)(1) states, in part:

> FNS shall withdraw the authorization of any firm authorized to participate in the program for any of the following reasons.

(i) The firm's continued participation in the program will not further the purposes of the program;

(ii) The firm fails to meet the specification of paragraph (b), (c), (d), (e), (f), (g), (h), or (i) of this section;

(iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section...for the time period specified in paragraph (k)(2) of this section.

7 CFR § 278.1(k)(2) states, in part:

FNS shall deny the application of any firm if it determines that:

(2) The firm has failed to meet the eligibility requirements for authorization under Criterion A or Criterion B, as specified in paragraph (b)(1)(i) of this section.... Any firm that has been denied authorization on these bases shall not be eligible to submit a new application for authorization in the program for a minimum period of six months from the effective date of the denial.

7 CFR § 271.2 defines a retail food store as:

(1) An establishment or house-to-house trade route that sells food for home preparation and consumption normally displayed in a public area, and either offers for sale qualifying staple food items on a continuous basis, evidenced by having no fewer than [three]* different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety, including at least one variety of perishable foods in at least [two]* such categories (Criterion A) as set forth in § 278.1(b)(1) of this chapter, or has more than 50 percent of its total gross retail sales in staple foods (Criterion B) as set forth in § 278.1(b)(1) of this chapter as determined by visual inspection, marketing structure, business licenses, accessibility of food items offered for sale, purchase and sales records, counting of stockkeeping units, or other inventory or accounting recordkeeping methods that are customary or reasonable in the retail food industry as set forth in § 278.1(b)(1) of this chapter...

---

\* As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 271.2 defines staple food as:

> ...food items intended for home preparation and consumption in
> each of the following four categories: Meat, poultry, or fish;
> bread or cereals; vegetables or fruits; and dairy products...
> Hot foods are not eligible for purchase with SNAP benefits and,
> therefore, do not qualify as staple foods for the purpose of
> determining eligibility under § 278.1(b)(1) of this chapter.
> Commercially processed foods and prepared mixtures with multiple
> ingredients that do not represent a single staple food category
> shall only be counted in one staple food category. For example,
> foods such as cold pizza, macaroni and cheese, multi-ingredient
> soup, or frozen dinners, shall only be counted as one staple food
> item and will be included in the staple food category of the main
> ingredient as determined by FNS. Accessory food items include
> foods that are generally considered snack foods or desserts such
> as, but not limited to, chips, ice cream, crackers, cupcakes,
> cookies, popcorn, pastries, and candy, and other food items that
> complement or supplement meals, such as, but not limited to,
> coffee, tea, cocoa, carbonated and uncarbonated drinks,
> condiments, spices, salt, and sugar. Items shall not be
> classified as accessory food exclusively based on packaging size
> but rather based on the aforementioned definition and as
> determined by FNS. A food product containing an accessory food
> item as its main ingredient shall be considered an accessory food
> item. Accessory food items shall not be considered staple foods
> for purposes of determining the eligibility of any firm.

7 CFR § 278.1(b)(1)(i) states, in part:

> An establishment...will effectuate the purposes of the program if
> it sells food for home preparation and consumption and meets one
> of the following criteria: Offer for sale, on a continuous basis,
> a variety of qualifying foods in each of the four categories of
> staple foods...including perishable foods in at least [two]* of
> the categories (Criterion A); or have more than 50 percent of the
> total gross retail sales of the establishment...in staple foods
> (Criterion B).

7 CFR § 278.1(b)(1)(ii) states, in part:

> In order to qualify under [Criterion A] firms shall:
>
> (A) Offer for sale and normally display in a public area,
> qualifying staple food items on a continuous basis, evidenced by

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy
Memorandum 2020-04 for additional information regarding the enhanced retailer standards,
which were implemented on January 17, 2018. This memorandum can be found on the FNS
public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

having, on any given day of operation, no fewer than *[three]*[*] different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety and at least one variety of perishable foods in at least *[two]*[*] staple food categories. Documentation to determine if a firm stocks a sufficient amount of required staple foods to offer them for sale on a continuous basis may be required in cases where it is not clear that the firm has made reasonable stocking efforts to meet the stocking requirement. Such documentation can be achieved through verifying information, when requested by FNS, such as invoices and receipts in order to prove that the firm had ordered and/or received a sufficient amount of required staple foods up to 21 calendar days prior to the date of the store visit...

(B) Offer for sale perishable staple food items in at least *[two]*[*] staple food categories. Perishable foods are items which are either frozen staple food items or fresh, unrefrigerated or refrigerated staple food items that will spoil or suffer significant deterioration in quality within 2-3 weeks; and

(C) *[Offer a variety of staple foods which means different types of foods, such as apples, cabbage, tomatoes, and squash in the fruit or vegetable staple food category, or milk, cheese, butter and yogurt in the dairy category. Variety of foods is not to be interpreted as different brands, different nutrient values, different varieties of packaging, or different package sizes. Similar processed food items with varying ingredients such as, but not limited to, sausages, breakfast cereals, milk, sliced breads, and cheeses, and similar unprocessed food items, such as, but not limited to different varieties of apples, cabbage, tomatoes, or squash shall not each be considered as more than one staple food variety for the purpose of determining variety. Multiple ingredient food items...such as...cold pizza, macaroni and cheese, soup, or frozen dinners, shall only be counted as one staple food variety each and will normally be included in the staple food category of the main ingredient as determined by the FNS.]*[*]

7 CFR § 278.1(b)(1)(iii) states, in part:

In order to qualify under [Criterion B] firms must have more than 50 percent of their total gross retail sales in staple food sales. Total gross retail sales must include all retail sales of a firm, including food and non-food merchandise, as well as services, such as rental fees, professional fees, and entertainment/sports/games income...

---

[*] As currently implemented. See SNAP Retailer Policy Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 278.1(b)(6) states:

> *Need for access.* FNS will consider whether the applicant firm is located in an area with significantly limited access to food when the applicant firm fails to meet Criterion A per paragraph (b)(1)(ii) or Criterion B per paragraph (b)(1)(iii) of this section so long as the applicant firm meets all other SNAP authorization requirements. In determining whether an applicant is located in such an area, FNS may consider access factors such as, but not limited to, the distance from the applicant firm to the nearest currently SNAP authorized firm and transportation options. In determining whether to authorize an applicant despite its failure to meet Criterion A and Criterion B, FNS will also consider factors such as, but not limited to, the extent of the applicant firm's stocking deficiencies in meeting Criterion A and Criterion B and whether the store furthers the purposes of the Program. Such considerations will be conducted during the application process as described in paragraph (a) of this section.

## APPELLANT'S CONTENTIONS

Appellant made the following summarized contentions for administrative review:

- Appellant requests reconsideration of the SNAP authorization withdrawal determination.
- Appellant has been an active and good faith participant in the SNAP program and its predecessor programs since inception.
- Customers in the state depend on using their EBT cards at Appellant.
- The letter Appellant received stated that it failed to stock the required number of dairy units.
- Appellant's understanding of the regulations is that it must have the required number of food items in three of the four food categories. As the withdrawal letter is silent to the other three categories, Appellant assumes it carried the necessary items in the other three categories or the other categories were not inspected. Either way, failing to have the minimum number of units in just one category puts Appellant in compliance with its reading of the regulations.
- Appellant is a convenience store. Stock turns over very quickly.
- Appellant provided a listing of its invoices/receipts from its grocery supplier for the 21 days prior to the date of the store visit.
- Based on their business model, no convenience store has more than 50% of its total gross retail sales in staple foods.
- Criterion B is intended for stores that sell one type of staple food.

Appellant provided a copy of the letter and invoice listing it had previously provided to the Retailer Operations Division.

The preceding may represent only a summary of Appellant's contentions presented in this

matter. However, in reaching a final decision, full attention was given to all contentions presented, including any not specifically summarized or referenced herein.

## ANALYSIS AND FINDINGS

It is important to clarify for the record that the purpose of this review is to either validate or invalidate the earlier determination of the Retailer Operations Division. Thus, this review is limited to consideration of the relevant facts and circumstances as they existed at the time the Retailer Operations Division rendered its decision.

After reviewing the record, as well as evaluating the contentions submitted by Appellant, this review finds that Appellant does not carry, on a continuous basis, sufficient staple food inventory to be eligible for SNAP authorization under Criterion A, nor do its staple foods sales meet eligibility requirements under Criterion B. Appellant is also ineligible for authorization under the Need for Access provision. Accordingly, Appellant's SNAP authorization was properly withdrawn for a period of six months.

### Criterion A Eligibility

In order for a firm to be eligible under Criterion A, it must offer for sale no fewer than three different varieties of food items in each of the four staple food categories, with a minimum depth of stock of three stocking units for each variety. In addition, retailers must meet Criterion A eligibility requirements on a continuous basis.

Regarding Appellant, the record shows that the firm did not have enough inventory in the dairy products staple food category on the day of the store visit to meet Criterion A eligibility requirements. When the Retailer Operations Division withdrew Appellant's firm, it found that the firm had adequate stocking units of only one dairy product variety: milk. The firm did not have three stocking units of two additional varieties of dairy products. Appellant was six stocking units short of meeting Criterion A eligibility requirements.

On review, Appellant provided a copy of the inventory records for the 21-day period prior to the store visit, which it had previously provided to the Retailer Operations Division. A review of these records demonstrated that the store purchased additional milk products, which Appellant had already been credited with. The inventory records did not show the purchase of additional dairy staple food products. Accordingly, Appellant remains six stocking units short of meeting inventory requirements in the dairy products staple food category.

The inventory records submitted fail to establish that the firm normally carries a sufficient variety and quantity of staple foods. SNAP regulations require that a firm continuously maintain sufficient staple food inventory in order to remain eligible for program participation (see 7 CFR § 278.1(b)(1)(i) and (ii)). A firm that does not maintain proper inventory at all times does not effectuate the purposes of the program and cannot remain authorized.

This review agrees with the Retailer Operations Division's assessment of Appellant's inventory at the time of the store visit and finds that Appellant's contentions do not demonstrate that it met

Criterion A eligibility requirements continuously. Accordingly, the Retailer Operations Division correctly determined that Appellant is not eligible for SNAP authorization under Criterion A.

## Criterion B Eligibility

Eligibility under Criterion B requires that more than 50 percent of the firm's total gross retail sales be from the sale of staple foods. The Retailer Operations Division determined that Appellant did not meet Criterion B because the store's staple food sales did not comprise more than 50 percent of its gross retail sales. This was based on the SNAP retailer reauthorization materials provided by Appellant, in which Appellant reported that only about 5 percent of the store's gross retail sales were in staple food items. On review, Appellant did not provide any information that would demonstrate the percentage of staple foods contained in the store's gross retail sales.

There is nothing in the record that indicates this low percentage of staple food sales to gross retail sales is inaccurate. Based on a preponderance of the evidence, the Retailer Operations Division properly determined that Appellant was ineligible under Criterion B.

## Need for Access

SNAP regulations at 7 CFR § 278.1(b)(6) state that FNS will consider authorizing a firm which fails to meet Criterion A or B as long as it is located in an area with significantly limited access to food and provided that it meets all other eligibility requirements. This Need for Access evaluation considers factors such as distance to the nearest SNAP-authorized retail store, transportation options, extent of the firm's stocking deficiencies, and whether the firm furthers the purposes of the program.

As for Hobo Pantry Food Store #10, the record indicates that the Retailer Operations Division conducted a Need for Access evaluation and determined Appellant did not qualify for SNAP authorization under this provision. This review agrees that authorization under the Need for Access provision is not appropriate in this case.

## CONCLUSION

Based on the analysis above, the determination by the Retailer Operations Division to withdraw the SNAP authorization of Hobo Pantry Food Store #10 is sustained. The firm does not meet eligibility requirements under Criterion A or B as outlined in regulations, at 7 CFR § 278.1(b)(1), and is not eligible for authorization under Need for Access, as provided under 7 CFR § 278.1(b)(6).

Additionally, the contentions presented by Appellant are not sufficient to show that the withdrawal decision made by the Retailer Operations Division should be reversed.

Pursuant to 7 CFR § 278.1(k)(2), Appellant is ineligible to reapply for authorization as a retailer in SNAP for a minimum period of six months from the effective date of the withdrawal. In accordance with the Food and Nutrition Act of 2008 and SNAP regulations, the withdrawal of

Hobo Pantry Food Store #10 shall become effective 30 days after delivery of this decision.

When eligible, Appellant may reapply for SNAP authorization using the application instructions contained on the FNS website. Questions regarding the application process can be answered by the FNS Retailer Service Center at 877-823-4369.

### RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

AMIE CHURCHILL                                                    November 22, 2024
ADMINISTRATIVE REVIEW OFFICER

# EXHIBIT 1D

**U.S. Department of Agriculture**
**Food and Nutrition Service**
**Administrative and Judicial Review Branch**

Hobo Pantry Food Store #20,

Appellant,

v.

Retailer Operations Division,

Respondent.

Case Number: C0275909

### FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS) finds there is sufficient evidence to support the determination by the Retailer Operations Division to withdraw the authorization of Hobo Pantry Food Store #20 ("Appellant") to participate as a retailer in the Supplemental Nutrition Assistance Program (SNAP). As a result, the firm may not reapply for SNAP authorization for a period of six months from the date of withdrawal.

### ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 Code of Federal Regulations (CFR) Part 278, when it withdrew the authorization of Hobo Pantry Food Store #20 to participate as a SNAP retailer.

### AUTHORITY

7 U.S.C. § 2023 and implementing regulations, at 7 CFR § 279.1, provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

### CASE SUMMARY

Appellant, Hobo Pantry Food Store #20, was initially authorized to participate as a retailer in SNAP on July 2, 1996. In accordance with regulation, each SNAP-authorized firm is required to undergo a periodic reauthorization process to determine whether the firm still meets eligibility requirements.

In June 2022, Appellant provided information in support of the reauthorization process. Appellant reported that staple foods comprised approximately five percent of the store's total

2

retail sales. As part of the firm's reauthorization process, an onsite store visit was conducted by an FNS contractor on July 10, 2023, to verify the firm's reported staple food stock.

After reviewing the store visit report and photographs, and re-evaluating Appellant's reauthorization materials, the Retailer Operations Division determined that the firm was ineligible for SNAP participation under either Criterion A or Criterion B, as set forth in 7 CFR § 278.1(b)(1) of SNAP regulations.

In a letter dated August 25, 2023, the Retailer Operations Division informed Appellant that its SNAP authorization was being withdrawn for a period of six months pursuant to regulation, at 7 CFR § 278.1(k)(2). The withdrawal letter stated Appellant failed to meet the requirements of Criterion A because it did not offer for sale a variety of foods in required minimum quantities on a continuous basis in each of the four staple food categories and it failed to meet the requirements of Criterion B because staple food sales did not comprise more than 50 percent of its total retail sales. The letter indicated that FNS considered the firm's eligibility under the Need for Access provision of the regulations, found at 7 CFR § 278.1(b)(6), but determined that Appellant did not qualify for SNAP authorization under this provision.

On September 1, 2023, Appellant requested an administrative review of the withdrawal determination. Although the request was granted, Appellant's SNAP authorization was inadvertently withdrawn. Appellant's authorization was subsequently reinstated, and withdrawal is being held in abeyance pending completion of this review.

On October 23, 2024, the administrative review was assigned to review officer Amie Churchill.

## STANDARD OF REVIEW

In an appeal of an adverse action, such as the withdrawal of a firm's SNAP authorization, an appellant bears the burden of proving by a preponderance of the evidence that the administrative action should be reversed. This means an appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling law in this matter is found in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2018), and is promulgated through regulation under Title 7 CFR Part 278. In particular, 7 CFR § 278.1(l)(1) and § 278.1(k)(2) establish the authority upon which FNS shall withdraw the SNAP authorization of any firm which fails to meet established eligibility requirements.

7 CFR § 278.1(l)(1) states, in part:

```
FNS shall withdraw the authorization of any firm authorized to
participate in the program for any of the following reasons.
```

(i) The firm's continued participation in the program will not further the purposes of the program;

(ii) The firm fails to meet the specification of paragraph (b), (c), (d), (e), (f), (g), (h), or (i) of this section;

(iii) The firm fails to meet the requirements for eligibility under Criterion A or B, as specified in paragraph (b)(1)(i) of this section...for the time period specified in paragraph (k)(2) of this section.

7 CFR § 278.1(k)(2) states, in part:

FNS shall deny the application of any firm if it determines that:

(2) The firm has failed to meet the eligibility requirements for authorization under Criterion A or Criterion B, as specified in paragraph (b)(1)(i) of this section.... Any firm that has been denied authorization on these bases shall not be eligible to submit a new application for authorization in the program for a minimum period of six months from the effective date of the denial.

7 CFR § 271.2 defines a retail food store as:

(1) An establishment or house-to-house trade route that sells food for home preparation and consumption normally displayed in a public area, and either offers for sale qualifying staple food items on a continuous basis, evidenced by having no fewer than *[three]** different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety, including at least one variety of perishable foods in at least *[two]** such categories (Criterion A) as set forth in § 278.1(b)(1) of this chapter, or has more than 50 percent of its total gross retail sales in staple foods (Criterion B) as set forth in § 278.1(b)(1) of this chapter as determined by visual inspection, marketing structure, business licenses, accessibility of food items offered for sale, purchase and sales records, counting of stockkeeping units, or other inventory or accounting recordkeeping methods that are customary or reasonable in the retail food industry as set forth in § 278.1(b)(1) of this chapter...

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 271.2 defines staple food as:

> ...food items intended for home preparation and consumption in each of the following four categories: Meat, poultry, or fish; bread or cereals; vegetables or fruits; and dairy products... Hot foods are not eligible for purchase with SNAP benefits and, therefore, do not qualify as staple foods for the purpose of determining eligibility under § 278.1(b)(1) of this chapter. Commercially processed foods and prepared mixtures with multiple ingredients that do not represent a single staple food category shall only be counted in one staple food category. For example, foods such as cold pizza, macaroni and cheese, multi-ingredient soup, or frozen dinners, shall only be counted as one staple food item and will be included in the staple food category of the main ingredient as determined by FNS. Accessory food items include foods that are generally considered snack foods or desserts such as, but not limited to, chips, ice cream, crackers, cupcakes, cookies, popcorn, pastries, and candy, and other food items that complement or supplement meals, such as, but not limited to, coffee, tea, cocoa, carbonated and uncarbonated drinks, condiments, spices, salt, and sugar. Items shall not be classified as accessory food exclusively based on packaging size but rather based on the aforementioned definition and as determined by FNS. A food product containing an accessory food item as its main ingredient shall be considered an accessory food item. Accessory food items shall not be considered staple foods for purposes of determining the eligibility of any firm.

7 CFR § 278.1(b)(1)(i) states, in part:

> An establishment...will effectuate the purposes of the program if it sells food for home preparation and consumption and meets one of the following criteria: Offer for sale, on a continuous basis, a variety of qualifying foods in each of the four categories of staple foods...including perishable foods in at least *[two]* of the categories (Criterion A); or have more than 50 percent of the total gross retail sales of the establishment...in staple foods (Criterion B).

7 CFR § 278.1(b)(1)(ii) states, in part:

> In order to qualify under [Criterion A] firms shall:
>
> (A) Offer for sale and normally display in a public area, qualifying staple food items on a continuous basis, evidenced by

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

having, on any given day of operation, no fewer than *[three]*\* different varieties of food items in each of the four staple food categories with a minimum depth of stock of three stocking units for each qualifying staple variety and at least one variety of perishable foods in at least *[two]*\* staple food categories. Documentation to determine if a firm stocks a sufficient amount of required staple foods to offer them for sale on a continuous basis may be required in cases where it is not clear that the firm has made reasonable stocking efforts to meet the stocking requirement. Such documentation can be achieved through verifying information, when requested by FNS, such as invoices and receipts in order to prove that the firm had ordered and/or received a sufficient amount of required staple foods up to 21 calendar days prior to the date of the store visit...

(B) Offer for sale perishable staple food items in at least *[two]*\* staple food categories. Perishable foods are items which are either frozen staple food items or fresh, unrefrigerated or refrigerated staple food items that will spoil or suffer significant deterioration in quality within 2-3 weeks; and

(C) *[Offer a variety of staple foods which means different types of foods, such as apples, cabbage, tomatoes, and squash in the fruit or vegetable staple food category, or milk, cheese, butter and yogurt in the dairy category. Variety of foods is not to be interpreted as different brands, different nutrient values, different varieties of packaging, or different package sizes. Similar processed food items with varying ingredients such as, but not limited to, sausages, breakfast cereals, milk, sliced breads, and cheeses, and similar unprocessed food items, such as, but not limited to different varieties of apples, cabbage, tomatoes, or squash shall not each be considered as more than one staple food variety for the purpose of determining variety. Multiple ingredient food items...such as...cold pizza, macaroni and cheese, soup, or frozen dinners, shall only be counted as one staple food variety each and will normally be included in the staple food category of the main ingredient as determined by the FNS.]*\*

7 CFR § 278.1(b)(1)(iii) states, in part:

In order to qualify under *[Criterion B]* firms must have more than 50 percent of their total gross retail sales in staple food sales. Total gross retail sales must include all retail sales of a firm, including food and non-food merchandise, as well as services, such as rental fees, professional fees, and entertainment/sports/games income...

---

\* As currently implemented. See SNAP Retailer Policy Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 278.1(b)(6) states:

> *Need for access.* FNS will consider whether the applicant firm is
> located in an area with significantly limited access to food when
> the applicant firm fails to meet Criterion A per paragraph
> (b)(1)(ii) or Criterion B per paragraph (b)(1)(iii) of this
> section so long as the applicant firm meets all other SNAP
> authorization requirements. In determining whether an applicant
> is located in such an area, FNS may consider access factors such
> as, but not limited to, the distance from the applicant firm to
> the nearest currently SNAP authorized firm and transportation
> options. In determining whether to authorize an applicant despite
> its failure to meet Criterion A and Criterion B, FNS will also
> consider factors such as, but not limited to, the extent of the
> applicant firm's stocking deficiencies in meeting Criterion A and
> Criterion B and whether the store furthers the purposes of the
> Program. Such considerations will be conducted during the
> application process as described in paragraph (a) of this
> section.

## APPELLANT'S CONTENTIONS

Appellant made the following summarized contentions for administrative review:

- Appellant requests reconsideration of the SNAP authorization withdrawal determination.
- Appellant has been an active and good faith participant in the SNAP program and its predecessor programs since inception.
- Customers in the state depend on using their EBT cards at Appellant.
- The letter Appellant received stated that it failed to stock the required number of dairy units.
- Appellant's understanding of the regulations is that it must have the required number of food items in three of the four food categories. As the withdrawal letter is silent to the other three categories, Appellant assumes it carried the necessary items in the other three categories or the other categories were not inspected. Either way, failing to have the minimum number of units in just one category puts Appellant in compliance with its reading of the regulations.
- Appellant is a convenience store. Stock turns over very quickly.
- Appellant provided a listing of its invoices/receipts from its grocery supplier for the 21 days prior to the date of the store visit.
- Based on their business model, no convenience store has more than 50% of its total gross retail sales in staple foods.
- Criterion B is intended for stores that sell one type of staple food.

Appellant provided a copy of the letter and invoice listing it had previously provided to the Retailer Operations Division.

The preceding may represent only a summary of Appellant's contentions presented in this

matter. However, in reaching a final decision, full attention was given to all contentions presented, including any not specifically summarized or referenced herein.

## ANALYSIS AND FINDINGS

It is important to clarify for the record that the purpose of this review is to either validate or invalidate the earlier determination of the Retailer Operations Division. Thus, this review is limited to consideration of the relevant facts and circumstances as they existed at the time the Retailer Operations Division rendered its decision.

After reviewing the record, as well as evaluating the contentions submitted by Appellant, this review finds that Appellant does not carry, on a continuous basis, sufficient staple food inventory to be eligible for SNAP authorization under Criterion A, nor do its staple foods sales meet eligibility requirements under Criterion B. Appellant is also ineligible for authorization under the Need for Access provision. Accordingly, Appellant's SNAP authorization was properly withdrawn for a period of six months.

### Criterion A Eligibility

In order for a firm to be eligible under Criterion A, it must offer for sale no fewer than three different varieties of food items in each of the four staple food categories, with a minimum depth of stock of three stocking units for each variety. In addition, retailers must meet Criterion A eligibility requirements on a continuous basis.

Regarding Appellant, the record shows that the firm did not have enough inventory in the dairy products staple food category on the day of the store visit to meet Criterion A eligibility requirements. When the Retailer Operations Division withdrew Appellant's firm, it found that the firm had adequate stocking units of only one dairy product variety: milk. The firm did not have three stocking units of two additional varieties of dairy products. Appellant was six stocking units short of meeting Criterion A eligibility requirements.

On review, Appellant provided a copy of the inventory records for the 21-day period prior to the store visit, which it had previously provided to the Retailer Operations Division. A review of these records demonstrated that the store purchased additional milk products, which Appellant had already been credited with. The inventory records did not show the purchase of additional dairy staple food products. Accordingly, Appellant remains six stocking units short of meeting inventory requirements in the dairy products staple food category.

The inventory records submitted fail to establish that the firm normally carries a sufficient variety and quantity of staple foods. SNAP regulations require that a firm continuously maintain sufficient staple food inventory in order to remain eligible for program participation (see 7 CFR § 278.1(b)(1)(i) and (ii)). A firm that does not maintain proper inventory at all times does not effectuate the purposes of the program and cannot remain authorized.

This review agrees with the Retailer Operations Division's assessment of Appellant's inventory at the time of the store visit and finds that Appellant's contentions do not demonstrate that it met

Criterion A eligibility requirements continuously. Accordingly, the Retailer Operations Division correctly determined that Appellant is not eligible for SNAP authorization under Criterion A.

### Criterion B Eligibility

Eligibility under Criterion B requires that more than 50 percent of the firm's total gross retail sales be from the sale of staple foods. The Retailer Operations Division determined that Appellant did not meet Criterion B because the store's staple food sales did not comprise more than 50 percent of its gross retail sales. This was based on the SNAP retailer reauthorization materials provided by Appellant, in which Appellant reported that only about 5 percent of the store's gross retail sales were in staple food items. On review, Appellant did not provide any information that would demonstrate the percentage of staple foods contained in the store's gross retail sales.

There is nothing in the record that indicates this low percentage of staple food sales to gross retail sales is inaccurate. Based on a preponderance of the evidence, the Retailer Operations Division properly determined that Appellant was ineligible under Criterion B.

### Need for Access

SNAP regulations at 7 CFR § 278.1(b)(6) state that FNS will consider authorizing a firm which fails to meet Criterion A or B as long as it is located in an area with significantly limited access to food and provided that it meets all other eligibility requirements. This Need for Access evaluation considers factors such as distance to the nearest SNAP-authorized retail store, transportation options, extent of the firm's stocking deficiencies, and whether the firm furthers the purposes of the program.

As for Hobo Pantry Food Store #20, the record indicates that the Retailer Operations Division conducted a Need for Access evaluation and determined Appellant did not qualify for SNAP authorization under this provision. This review agrees that authorization under the Need for Access provision is not appropriate in this case.

### CONCLUSION

Based on the analysis above, the determination by the Retailer Operations Division to withdraw the SNAP authorization of Hobo Pantry Food Store #20 is sustained. The firm does not meet eligibility requirements under Criterion A or B as outlined in regulations, at 7 CFR § 278.1(b)(1), and is not eligible for authorization under Need for Access, as provided under 7 CFR § 278.1(b)(6).

Additionally, the contentions presented by Appellant are not sufficient to show that the withdrawal decision made by the Retailer Operations Division should be reversed.

Pursuant to 7 CFR § 278.1(k)(2), Appellant is ineligible to reapply for authorization as a retailer in SNAP for a minimum period of six months from the effective date of the withdrawal. In accordance with the Food and Nutrition Act of 2008 and SNAP regulations, the withdrawal of

Hobo Pantry Food Store #20 shall become effective 30 days after delivery of this decision.

When eligible, Appellant may reapply for SNAP authorization using the application instructions contained on the FNS website. Questions regarding the application process can be answered by the FNS Retailer Service Center at 877-823-4369.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

AMIE CHURCHILL                                    November 22, 2024
ADMINISTRATIVE REVIEW OFFICER

# EXHIBIT 1E

U.S. Department of Agriculture
Food and Nutrition Service
Administrative and Judicial Review Branch

Hobo Pantry Food Store #32,

Appellant,

v.

Retailer Operations Division,

Respondent.

Case Number: C0275916

## FINAL AGENCY DECISION

The U.S. Department of Agriculture (USDA) Food and Nutrition Service (FNS) finds there is sufficient evidence to support the determination by the Retailer Operations Division to withdraw the authorization of Hobo Pantry Food Store #32 ("Appellant") to participate as a retailer in the Supplemental Nutrition Assistance Program (SNAP). As a result, the firm may not reapply for SNAP authorization for a period of six months from the date of withdrawal.

## ISSUE

The issue accepted for review is whether the Retailer Operations Division took appropriate action, consistent with Title 7 Code of Federal Regulations (CFR) Part 278, when it withdrew the authorization of Hobo Pantry Food Store #32 to participate as a SNAP retailer.

## AUTHORITY

7 U.S.C. § 2023 and implementing regulations, at 7 CFR § 279.1, provide that "A food retailer or wholesale food concern aggrieved by administrative action under § 278.1, § 278.6 or § 278.7 . . . may . . . file a written request for review of the administrative action with FNS."

## CASE SUMMARY

Appellant, Hobo Pantry Food Store #32, was initially authorized to participate as a retailer in SNAP on May 9, 2017. In accordance with regulation, each SNAP-authorized firm is required to undergo a periodic reauthorization process to determine whether the firm still meets eligibility requirements.

In June 2022, Appellant provided information in support of the reauthorization process. Appellant reported that staple foods comprised approximately five percent of the store's total

2

retail sales. As part of the firm's reauthorization process, an onsite store visit was conducted by an FNS contractor on July 7, 2023, to verify the firm's reported staple food stock.

After reviewing the store visit report and photographs, and re-evaluating Appellant's reauthorization materials, the Retailer Operations Division determined that the firm was ineligible for SNAP participation under either Criterion A or Criterion B, as set forth in 7 CFR § 278.1(b)(1) of SNAP regulations.

In a letter dated August 25, 2023, the Retailer Operations Division informed Appellant that its SNAP authorization was being withdrawn for a period of six months pursuant to regulation, at 7 CFR § 278.1(k)(2). The withdrawal letter stated Appellant failed to meet the requirements of Criterion A because it did not offer for sale a variety of foods in required minimum quantities on a continuous basis in each of the four staple food categories and it failed to meet the requirements of Criterion B because staple food sales did not comprise more than 50 percent of its total retail sales. The letter indicated that FNS considered the firm's eligibility under the Need for Access provision of the regulations, found at 7 CFR § 278.1(b)(6), but determined that Appellant did not qualify for SNAP authorization under this provision.

On September 1, 2023, Appellant requested an administrative review of the withdrawal determination. Although the request was granted, Appellant's SNAP authorization was inadvertently withdrawn. Appellant's authorization was subsequently reinstated, and withdrawal is being held in abeyance pending completion of this review.

On October 23, 2024, the administrative review was assigned to review officer Amie Churchill.

## STANDARD OF REVIEW

In an appeal of an adverse action, such as the withdrawal of a firm's SNAP authorization, an appellant bears the burden of proving by a preponderance of the evidence that the administrative action should be reversed. This means an appellant has the burden of providing relevant evidence which a reasonable mind, considering the record as a whole, would accept as sufficient to support a conclusion that the matter asserted is more likely to be true than not true.

## CONTROLLING LAW

The controlling law in this matter is found in the Food and Nutrition Act of 2008, as amended (7 U.S.C. § 2018), and is promulgated through regulation under Title 7 CFR Part 278. In particular, 7 CFR § 278.1(l)(1) and § 278.1(k)(2) establish the authority upon which FNS shall withdraw the SNAP authorization of any firm which fails to meet established eligibility requirements.

7 CFR § 278.1(l)(1) states, in part:

```
FNS shall withdraw the authorization of any firm authorized to
participate in the program for any of the following reasons.
```

(i) The firm's continued participation in the program will not
further the purposes of the program;

(ii) The firm fails to meet the specification of paragraph (b),
(c), (d), (e), (f), (g), (h), or (i) of this section;

(iii) The firm fails to meet the requirements for eligibility
under Criterion A or B, as specified in paragraph (b)(1)(i) of
this section...for the time period specified in paragraph (k)(2)
of this section.

7 CFR § 278.1(k)(2) states, in part:

FNS shall deny the application of any firm if it determines that:

(2) The firm has failed to meet the eligibility requirements for
authorization under Criterion A or Criterion B, as specified in
paragraph (b)(1)(i) of this section.... Any firm that has been
denied authorization on these bases shall not be eligible to
submit a new application for authorization in the program for a
minimum period of six months from the effective date of the
denial.

7 CFR § 271.2 defines a retail food store as:

(1) An establishment or house-to-house trade route that sells
food for home preparation and consumption normally displayed in a
public area, and either offers for sale qualifying staple food
items on a continuous basis, evidenced by having no fewer than
*[three]* different varieties of food items in each of the four
staple food categories with a minimum depth of stock of three
stocking units for each qualifying staple variety, including at
least one variety of perishable foods in at least *[two]* such
categories (Criterion A) as set forth in § 278.1(b)(1) of this
chapter, or has more than 50 percent of its total gross retail
sales in staple foods (Criterion B) as set forth in § 278.1(b)(1)
of this chapter as determined by visual inspection, marketing
structure, business licenses, accessibility of food items offered
for sale, purchase and sales records, counting of stockkeeping
units, or other inventory or accounting recordkeeping methods
that are customary or reasonable in the retail food industry as
set forth in § 278.1(b)(1) of this chapter...

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy
Memorandum 2020-04 for additional information regarding the enhanced retailer standards,
which were implemented on January 17, 2018. This memorandum can be found on the FNS
public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 271.2 defines staple food as:

> ...food items intended for home preparation and consumption in each of the following four categories: Meat, poultry, or fish; bread or cereals; vegetables or fruits; and dairy products... Hot foods are not eligible for purchase with SNAP benefits and, therefore, do not qualify as staple foods for the purpose of determining eligibility under § 278.1(b)(1) of this chapter. Commercially processed foods and prepared mixtures with multiple ingredients that do not represent a single staple food category shall only be counted in one staple food category. For example, foods such as cold pizza, macaroni and cheese, multi-ingredient soup, or frozen dinners, shall only be counted as one staple food item and will be included in the staple food category of the main ingredient as determined by FNS. Accessory food items include foods that are generally considered snack foods or desserts such as, but not limited to, chips, ice cream, crackers, cupcakes, cookies, popcorn, pastries, and candy, and other food items that complement or supplement meals, such as, but not limited to, coffee, tea, cocoa, carbonated and uncarbonated drinks, condiments, spices, salt, and sugar. Items shall not be classified as accessory food exclusively based on packaging size but rather based on the aforementioned definition and as determined by FNS. A food product containing an accessory food item as its main ingredient shall be considered an accessory food item. Accessory food items shall not be considered staple foods for purposes of determining the eligibility of any firm.

7 CFR § 278.1(b)(1)(i) states, in part:

> An establishment...will effectuate the purposes of the program if it sells food for home preparation and consumption and meets one of the following criteria: Offer for sale, on a continuous basis, a variety of qualifying foods in each of the four categories of staple foods...including perishable foods in at least *[two]** of the categories (Criterion A); or have more than 50 percent of the total gross retail sales of the establishment...in staple foods (Criterion B).

7 CFR § 278.1(b)(1)(ii) states, in part:

> In order to qualify under [Criterion A] firms shall:
>
> (A) Offer for sale and normally display in a public area, qualifying staple food items on a continuous basis, evidenced by

---

* As currently implemented. See SNAP Retailer Policy and Management Division Policy Memorandum 2020-04 for additional information regarding the enhanced retailer standards, which were implemented on January 17, 2018. This memorandum can be found on the FNS public website at https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

having, on any given day of operation, no fewer than [three]*
different varieties of food items in each of the four staple food
categories with a minimum depth of stock of three stocking units
for each qualifying staple variety and at least one variety of
perishable foods in at least [two]* staple food categories.
Documentation to determine if a firm stocks a sufficient amount
of required staple foods to offer them for sale on a continuous
basis may be required in cases where it is not clear that the
firm has made reasonable stocking efforts to meet the stocking
requirement. Such documentation can be achieved through verifying
information, when requested by FNS, such as invoices and receipts
in order to prove that the firm had ordered and/or received a
sufficient amount of required staple foods up to 21 calendar days
prior to the date of the store visit...
(B) Offer for sale perishable staple food items in at least
[two]* staple food categories. Perishable foods are items which
are either frozen staple food items or fresh, unrefrigerated or
refrigerated staple food items that will spoil or suffer
significant deterioration in quality within 2-3 weeks; and
(C) [Offer a variety of staple foods which means different types
of foods, such as apples, cabbage, tomatoes, and squash in the
fruit or vegetable staple food category, or milk, cheese, butter
and yogurt in the dairy category. Variety of foods is not to be
interpreted as different brands, different nutrient values,
different varieties of packaging, or different package sizes.
Similar processed food items with varying ingredients such as,
but not limited to, sausages, breakfast cereals, milk, sliced
breads, and cheeses, and similar unprocessed food items, such as,
but not limited to different varieties of apples, cabbage,
tomatoes, or squash shall not each be considered as more than one
staple food variety for the purpose of determining variety.
Multiple ingredient food items...such as...cold pizza, macaroni
and cheese, soup, or frozen dinners, shall only be counted as one
staple food variety each and will normally be included in the
staple food category of the main ingredient as determined by the
FNS.]*

7 CFR § 278.1(b)(1)(iii) states, in part:

In order to qualify under [Criterion B] firms must have more than
50 percent of their total gross retail sales in staple food
sales. Total gross retail sales must include all retail sales of
a firm, including food and non-food merchandise, as well as
services, such as rental fees, professional fees, and
entertainment/sports/games income...

---

* As currently implemented. See SNAP Retailer Policy Division Policy Memorandum 2020-04
for additional information regarding the enhanced retailer standards, which were implemented on
January 17, 2018. This memorandum can be found on the FNS public website at
https://www.fns.usda.gov/snap/retailer-eligibility-clarification-of-criterion.

7 CFR § 278.1(b)(6) states:

> *Need for access.* FNS will consider whether the applicant firm is
> located in an area with significantly limited access to food when
> the applicant firm fails to meet Criterion A per paragraph
> (b)(1)(ii) or Criterion B per paragraph (b)(1)(iii) of this
> section so long as the applicant firm meets all other SNAP
> authorization requirements. In determining whether an applicant
> is located in such an area, FNS may consider access factors such
> as, but not limited to, the distance from the applicant firm to
> the nearest currently SNAP authorized firm and transportation
> options. In determining whether to authorize an applicant despite
> its failure to meet Criterion A and Criterion B, FNS will also
> consider factors such as, but not limited to, the extent of the
> applicant firm's stocking deficiencies in meeting Criterion A and
> Criterion B and whether the store furthers the purposes of the
> Program. Such considerations will be conducted during the
> application process as described in paragraph (a) of this
> section.

## APPELLANT'S CONTENTIONS

Appellant made the following summarized contentions for administrative review:

- Appellant requests reconsideration of the SNAP authorization withdrawal determination.
- Appellant has been an active and good faith participant in the SNAP program and its predecessor programs since inception.
- Customers in the state depend on using their EBT cards at Appellant.
- The letter Appellant received stated that it failed to stock the required number of dairy units.
- Appellant's understanding of the regulations is that it must have the required number of food items in three of the four food categories. As the withdrawal letter is silent to the other three categories, Appellant assumes it carried the necessary items in the other three categories or the other categories were not inspected. Either way, failing to have the minimum number of units in just one category puts Appellant in compliance with its reading of the regulations.
- Appellant is a convenience store. Stock turns over very quickly.
- Appellant provided a listing of its invoices/receipts from its grocery supplier for the 21 days prior to the date of the store visit.
- Based on their business model, no convenience store has more than 50% of its total gross retail sales in staple foods.
- Criterion B is intended for stores that sell one type of staple food.

Appellant provided a copy of the letter and invoice listing it had previously provided to the Retailer Operations Division.

The preceding may represent only a summary of Appellant's contentions presented in this

matter. However, in reaching a final decision, full attention was given to all contentions presented, including any not specifically summarized or referenced herein.

## ANALYSIS AND FINDINGS

It is important to clarify for the record that the purpose of this review is to either validate or invalidate the earlier determination of the Retailer Operations Division. Thus, this review is limited to consideration of the relevant facts and circumstances as they existed at the time the Retailer Operations Division rendered its decision.

After reviewing the record, as well as evaluating the contentions submitted by Appellant, this review finds that Appellant does not carry, on a continuous basis, sufficient staple food inventory to be eligible for SNAP authorization under Criterion A, nor do its staple foods sales meet eligibility requirements under Criterion B. Appellant is also ineligible for authorization under the Need for Access provision. Accordingly, Appellant's SNAP authorization was properly withdrawn for a period of six months.

## Criterion A Eligibility

In order for a firm to be eligible under Criterion A, it must offer for sale no fewer than three different varieties of food items in each of the four staple food categories, with a minimum depth of stock of three stocking units for each variety. In addition, retailers must meet Criterion A eligibility requirements on a continuous basis.

Regarding Appellant, the record shows that the firm did not have enough inventory in the dairy products staple food category on the day of the store visit to meet Criterion A eligibility requirements. When the Retailer Operations Division withdrew Appellant's firm, it found that the firm had adequate stocking units of only one dairy product variety: milk. The firm did not have three stocking units of two additional varieties of dairy products. Appellant was six stocking units short of meeting Criterion A eligibility requirements.

On review, Appellant provided a copy of the inventory records for the 21-day period prior to the store visit, which it had previously provided to the Retailer Operations Division. A review of these records demonstrated that the store purchased additional milk products, which Appellant had already been credited with. The inventory records did not show the purchase of additional dairy staple food products. Accordingly, Appellant remains six stocking units short of meeting inventory requirements in the dairy products staple food category.

The inventory records submitted fail to establish that the firm normally carries a sufficient variety and quantity of staple foods. SNAP regulations require that a firm continuously maintain sufficient staple food inventory in order to remain eligible for program participation (see 7 CFR § 278.1(b)(1)(i) and (ii)). A firm that does not maintain proper inventory at all times does not effectuate the purposes of the program and cannot remain authorized.

This review agrees with the Retailer Operations Division's assessment of Appellant's inventory at the time of the store visit and finds that Appellant's contentions do not demonstrate that it met

8

Criterion A eligibility requirements continuously. Accordingly, the Retailer Operations Division correctly determined that Appellant is not eligible for SNAP authorization under Criterion A.

## Criterion B Eligibility

Eligibility under Criterion B requires that more than 50 percent of the firm's total gross retail sales be from the sale of staple foods. The Retailer Operations Division determined that Appellant did not meet Criterion B because the store's staple food sales did not comprise more than 50 percent of its gross retail sales. This was based on the SNAP retailer reauthorization materials provided by Appellant, in which Appellant reported that only about 5 percent of the store's gross retail sales were in staple food items. On review, Appellant did not provide any information that would demonstrate the percentage of staple foods contained in the store's gross retail sales.

There is nothing in the record that indicates this low percentage of staple food sales to gross retail sales is inaccurate. Based on a preponderance of the evidence, the Retailer Operations Division properly determined that Appellant was ineligible under Criterion B.

## Need for Access

SNAP regulations at 7 CFR § 278.1(b)(6) state that FNS will consider authorizing a firm which fails to meet Criterion A or B as long as it is located in an area with significantly limited access to food and provided that it meets all other eligibility requirements. This Need for Access evaluation considers factors such as distance to the nearest SNAP-authorized retail store, transportation options, extent of the firm's stocking deficiencies, and whether the firm furthers the purposes of the program.

As for Hobo Pantry Food Store #32, the record indicates that the Retailer Operations Division conducted a Need for Access evaluation and determined Appellant did not qualify for SNAP authorization under this provision. This review agrees that authorization under the Need for Access provision is not appropriate in this case.

## CONCLUSION

Based on the analysis above, the determination by the Retailer Operations Division to withdraw the SNAP authorization of Hobo Pantry Food Store #32 is sustained. The firm does not meet eligibility requirements under Criterion A or B as outlined in regulations, at 7 CFR § 278.1(b)(1), and is not eligible for authorization under Need for Access, as provided under 7 CFR § 278.1(b)(6).

Additionally, the contentions presented by Appellant are not sufficient to show that the withdrawal decision made by the Retailer Operations Division should be reversed.

Pursuant to 7 CFR § 278.1(k)(2), Appellant is ineligible to reapply for authorization as a retailer in SNAP for a minimum period of six months from the effective date of the withdrawal. In accordance with the Food and Nutrition Act of 2008 and SNAP regulations, the withdrawal of

Hobo Pantry Food Store #32 shall become effective 30 days after delivery of this decision.

When eligible, Appellant may reapply for SNAP authorization using the application instructions contained on the FNS website. Questions regarding the application process can be answered by the FNS Retailer Service Center at 877-823-4369.

## RIGHTS AND REMEDIES

Applicable rights to a judicial review of this decision are set forth in 7 U.S.C. § 2023 and 7 CFR § 279.7. If Appellant desires a judicial review, the complaint must be filed in the U.S. District Court for the district in which Appellant's owner resides, is engaged in business, or in any court of record of the State having competent jurisdiction. This complaint, naming the United States as the defendant, must be filed within thirty (30) days of delivery of this decision. The judicial filing deadline is stipulated by statute; FNS has no authority to grant an extension.

Under the Freedom of Information Act, we are releasing this information in a redacted format as appropriate. FNS will protect, to the extent provided by law, personal information that could constitute an unwarranted invasion of privacy.

AMIE CHURCHILL                                              November 22, 2024
ADMINISTRATIVE REVIEW OFFICER